Thank you, Your Honors. May it please the Court, my name is Ann Voights and I represent Defendant Appellant Willie Alsha Hill. I'd like to reserve three minutes of my time if possible. This Court should reverse Mr. Hill's conviction because 1. The evidence was insufficient. 2. The Court did not give him multiple conspiracies or a specific unanimity instruction, even though the evidence warranted it. 3. The Court should have granted a mistrial for Mr. Hill at the same time that it granted one to his co-defendant. In the alternative, the Court should vacate Mr. Hill's sentence and his condition of supervised release. I intend to begin by focusing on the trial issues, although of course I'm happy to answer whatever questions the Court may have about sentencing. First, with respect to sufficiency, the two questions here really for the Court is what conspiracy was there, if any, and what was Mr. Hill's connection, and the evidence as to both was insufficient. In particular, I know that the government did not even argue in closing that he had reason to believe that whatever benefits he might get were probably dependent on the success of the entire venture, and that's because the evidence simply didn't support that. If you look at the length of the conspiracy alleged, they alleged an 11-month conspiracy, the crux of the evidence that was introduced that actually involved Mr. Hill involved a span of 9 days. The indictment alleged a count that included more than 10 defendants, but in this case, Mr. Hill's connections were with an extremely limited subset of those defendants. We think that given that, the evidence is simply insufficient to establish... I mean, there is case law that says that not every member of the conspiracy needs to understand the full scope of the conspiracy or all the participants or all parts of it, so long as he shares the overall objective and participates in that. So why isn't that kind of case law dispositive here of the sufficiency issue? Well, I think it's not dispositive here for two reasons. One is the structure of this particular conspiracy. To the extent that there was one conspiracy, and we'd submit that there wasn't, there really were multiple conspiracies, that there was a lack of any connection between Mr. Hill and any sense of an overall agreement. This court has held repeatedly that what is key when you're looking at something like this, where there's really sort of a hub-and-spoke conspiracy at best, is whether there's a rim that connects them, and that rim has to be some sense that there's an overall agreement and that the defendant is connected to that. And that simply isn't supported here based on these facts and based on the evidence. Why can't a jury draw from the, you know, individual actions and, you know, some of them are very tenuous, but why can't it draw from that a pattern and based on that pattern then infer that there's a broader agreement that ties everything together? Well, this court has done that in cases where there's substantially more evidence than here, but we'd submit that here the evidence is so limited. It's a good case, but the jury, our standard of review under Jackson is very permissive in allowing the jury to make its judgments. It is permissive, but it still imposes some teeth, and we think that this case is so far outside the realm of cases where courts have concluded that there is sufficient evidence that this court should reverse. But even if this court disagrees under the standard of sufficiency of the evidence, then we think, turning to the instructional issues, that's a very different standard. The question there is whether there was enough evidence or some evidence that would support giving an instruction. But our standard of review for that is plain error, right? I would disagree with respect to the multiple conspiracies instruction. We agree with you with respect to the specific unanimity instruction, but we think because in this case both defense counsel asked for the multiple conspiracies instruction, it should have been given and the error was preserved. Ms. Voigt, how would you, it's not clear to me, maybe you can help me here, what are the multiple conspiracies? Is it between the crack and powder cocaine? Is it between, there's the heroin piece that was set aside? What are the, can you give us a clear definition of which two conspiracies we should be looking for? Well, I think the problem is that there isn't. I mean, that there could be multiple conspiracies given the sheer number of defendants who are involved, the sort of lack of connection between a number of the events. If this court looks, for example, at the number of video buys that were involved, not one of them involved Mr. Hill actually playing a role in the transaction. So I think if you were looking at it, it could be broken down by substance, it could be broken down by particular groups of defendants, and we don't think that the evidence lends itself to a conclusion that these are subgroups, but that these are really sort of fragmented groups of people. Why isn't it a single cocaine conspiracy? I think because if this court looks at the evidence, it simply doesn't support the existence of one conspiracy as opposed to Mr. Tate potentially conspiring with multiple people independently. Okay, but this is the trial of Mr. Hill, so Mr. Tate, that's not inconsistent, is it, that Mr. Tate could be involved in separate conspiracies, again, if the evidence pertaining to Mr. Hill all relate to cocaine and for his part of the trial, that's nearly all of the evidence that was presented, wasn't it? I think, Your Honor, that raises two questions. One, the question of the sufficiency of the evidence that there was a conspiracy, but also Mr. Hill's connection to it. And I think if the court looks at what actually is in the record, it's very, very thin. And I think to contend that that is sufficient to establish his connection to a single conspiracy and to an overall agreement just isn't supported by the fact that he joked with someone at one point about being able to sell something for less. That's more consistent with someone being a competitor rather than a co-conspirator. The fact that he, you know, I think if this court looks at the evidence that the government relies on, for example, to claim that he served as a lookout, every time you sort of start pulling on these threads, we think that the conclusion that you couldn't find Mr. Hill responsible for any of the drug quantities because it wasn't reasonably foreseeable and he wasn't involved. We think that supports a conclusion that here, what the court should have done was to give the multiple conspiracies instruction and to give a specific unanimous instruction. But how did we say in Anguiano that a multiple conspiracies instruction is focused on the spillover issue is gone and any remaining issue about whether you're tagging the defendant with the right conspiracy is to be handled by specific unanimity? So isn't the issue you're getting at really a specific unanimity question and not a multiple conspiracies question? Well, I don't know we'd submit that it's both. We recognize the language in Anguiano, but in this case, obviously, it goes to the mistrial issue. But where's the authority that says that this can be analyzed as a, this, the fact pattern we have here can be analyzed as a multiple conspiracies instruction issue? I think Lapeer supports it. I also think that if this, that these facts are distinguishable from Anguiano because here, Mr. Hill went to trial with Mr. Tate and up until the mistrial and even after much of the evidence went to Mr. Tate and had no connection to Mr. Hill. But it seemed from the jury instruction colloquy that, that, I mean, it had been the concern that because there was a second heroin conspiracy and then there was reference to marijuana trafficking that that was the basis for the multiple conspiracies and there seemed to be an awareness that that had gone away when, you know, Mr. Tate, you know, Mr. Tate was there was a mistrial and then his, he went forward as a sole defendant. Well, I'd refer to two things. One, when they, originally when the instruction was submitted, they did point to the two conspiracies. But Mr. Tate also had pointed out and they joined in each other's objections that the multiple conspiracies would be appropriate because if the jury disbelieved the government's version of the conspiracy, that it would be aimed to the ultimate debate about what to give at the end. I think the record, she simply says that she submitted on one of the points. She recognized that one was no longer valid with the taking out of the heroin of the prison conspiracy, but submitted on the other. And we'd say that that is enough to preserve the issue here. If I might address very briefly the sentencing issues and then reserve the burden of my time, I'd simply like to note that in this case, since the resource submitted, Mr. Tate was sentenced to 144 months. That is not particularly far off Mr. Hill's sentence of 110 months. And we think that that, in this case, supports the fact that the sentence imposed, while it was a variance, was not a significant enough variance. And second, that the supervised release condition should be vacated because the court simply relied on what probation had said and acknowledged that there wasn't much in the record to support it. With that, I'd ask to reserve the very short balance of my time for rebuttal. We gave you, we asked a number of questions, so I'll give you two minutes. Thank you very much, Your Honor. All right. And we'll hear now from Mr. Pang. Good morning, Your Honors. May it please the Court. Jason Pang on behalf of the United States. I'm going to start by addressing some of the factual allegations that my colleague made, and then I'll get to the meat of the substance of whether a defendant participated in a single conspiracy. My colleague said that Mr. Hill's participation in this charged conspiracy only spanned nine days. Respectfully, the government believes that that's not reflected in the record. In fact, as the paper showed, Defendant Hill was a lookout on June 17th. He was intercepted on several wires during a wiretap in November and December, and he again appeared in January. That's not nine days. That's several months over the course of this entire conspiracy. With regard to the wire itself, over the course of November and December, as the Court is aware, a wiretap only occurs over a shortened period of time as authorized by the Court. In fact, over 30 days, Mr. Hill is intercepted agreeing to distribute drugs over six times. Six times over 30 days is not merely sporadic. That's a pattern. It's a pattern that evinces a relationship with Mr. Tate. And specifically, the calls on December 12th shows that he knows that the conspiracy to distribute drugs extends beyond just his relationship with Mr. Tate. On those calls, there's a co-defendant, Co-Defendant Aguilar, who tells Mr. Tate that someone's at the store who wants to buy drugs. Mr. Tate then tells Mr. Aguilar that the defendant, and they refer to the defendant using his gang moniker, Smoke, is going to deliver the drugs. And we know that Mr. Tate and Mr. Hill know that Mr. Aguilar's involved because Mr. Tate tells Mr. Hill, go to the store and deliver the drugs. That's where, and we know from the record, that's where Aguilar's waiting with the drug customer. That call is also very important and informative because during that call, Mr. Aguilar and Mr. Tate discuss how they're going to engage in a form of fronting. And in that call, Mr. Tate tells Mr. Aguilar, get the money from the client first. Smoke, the defendant, will deliver the drugs later. And the concept of legal and there's a lack of trust. Drug users are addicted to drugs, so they can be dangerous. That's why the exchange is at the same time. Here, when there's fronting. Mr. Hill's, I think, named, I think I'm correct, one of 32 counts. Is he named? He is in the conspiracy count, correct. Okay. And I guess I have the same question for you that I asked your friend. I mean, how are we supposed to parse the, you describe it as a drug conspiracy, but there are clearly different locales, different drugs, different markets, different means of transactions. How would you best define the conspiracy that was charged and proven here? Sure, your honor. This was a drug traffic conspiracy from three locations organized by the Hoovers. Now, of course, the fact that the Hoovers, the gang, was that was excluded, sanitized by trial, as the government agreed to. But the defendant actually has connections to all three locations, and he knows that there are more than just Mr. Tate involved in all three locations. On wiretap interceptions on December 9th, defendant Tate tells defendant Hill, the defendant in this case, on appeal, that he should deliver drugs to the yard. That's not the TNN market. That's not the place where he agreed to deliver drugs on December 12th. Likewise, on June 7th, defendant Taylor's presence, when another code of conspiracy, defendant Reed, agrees to sell drugs to a CI. And we know, based on his situation in the store, he's not inside the store, this is June in South LA, it's very hot, he sits outside, right at the entrance of the store, looking outwards. And we know why he's doing that, because of wire interceptions. We know he looks out for rivals driving around those three areas, all three stores, the two stores and the yard, they're all within a mile radius. He looks out for rivals, he says, do you want me to bounce him out? When Tate calls him and says, hey, there's someone driving around, check him out, he says, he looks like he's doing work. We know he's looking for police raids. That's the December call, where he says, I have my eye out, when defendant Tate tells him, there's police raiding nearby stores. So, this is all one conspiracy. It all involves the same time, around the late 2017 and early 2018, involves the same sets of people, although, as Judge Collin noted, you don't need to know every single member of the conspiracy. You don't need to know every single overt act in order to be a knowing member of the conspiracy. What the law requires is that you know that the conspiracy, the project to distribute drugs, extends beyond the conspiracy you have with the hub defendant. And here, the evidence is clear that defendant Hill knows that he's not the only spoke in this wheel. He knows that there's defendant Aguilar. He knows that there's defendant Reed. And any other sub-agreements or sub-groups, as the court previously explained in Shabani, does not eviscerate a single conspiracy. In fact, this case is stronger than in Shabani, because in Shabani, the defendants in that case delivered drugs to Alaska, and the only knowledge that the defendant knew in that case, that the conspiracy extended beyond his particular role, is that he was present at another exchange between the hub defendant and someone else, and that he was made aware that there was other cocaine. In this case, the defendant was actively participating with other members of the conspiracy, other than the hub defendant. To sell powder cocaine, cocaine generally, drugs, including marijuana and heroin, how would you draw that line? So defendant Hill agreed to distribute both powder cocaine and crack cocaine to the conspiracy. But again, the defendant does not need to know that there was also heroin, although I would say heroin is a separate conspiracy. As the court noted, heroin was excised from this trial. There were other drugs at play. But here, he understands that the scope of the broad project was to sell drugs from these three Hoover gang-controlled areas. Well, what about the, you referenced two of the locations, the yard and the first market. Is there any connection to the third market? Yes, your honor. On June 7th, defendant was present at the H&E market, that's the third place, and that's where he was situated, outside, in front, at the door, in the hot LA sun, during the summer in South LA, not inside, where there is the fan blowing, and he was looking outside when Mr. Reid left the store to get the drugs from Mr. Tate. And we know that because we got toll records between the two men. So, in fact, defendant is aware, although I would submit that the law does not require him to be aware, that the drugs were being distributed from all three locations. And he knows that there's more than just one person, more than just Mr. Tate in this conspiracy. Can you take a moment to address counsel's argument that Hill's sentence is fairly disproportionate relative to his role in the case, and also speak to the appropriateness of the gang-related supervised condition? Yes, your honor. So, I will note that the district court here granted a seven-level variance, which is equivalent to 100 months below the bottom line of the guidelines. And in the colloquy with the defendant, the district court, I think, and I don't think there's any claim of procedural error. I think the parties agreed that the district court was very thorough in evaluating and weighing the different factors here. The district court here acknowledged Mr. Hill's participation and his limited role in the conspiracy, as well as the mitigating facts submitted by his counsel, against the fact that the defendant is a career offender, and he's a career offender by his own choices. This isn't just a mere fact where a defendant is solely plagued by the fact that he has drug trafficking convictions. He was convicted of attempted murder with a handgun. His history, each and every decade, is convicted of the same crime, which is, I think, in his 20s, in his 30s, in his 40s, all convicted of drug trafficking offenses. He's doing it again and again and again. And so, balancing all those factors under 3553A, I think the court came to the right conclusion, which is he doesn't deserve a guideline sentence, or at least the district court believed, even though within a guideline sentence is presumptively reasonable under CARDI. He gave him a seven-level variance. That's a 100-month deduction. What was the guideline sentence in this case? It was 210 to 240 months. And it's based on career offender guidelines? Correct, Your Honor. I'm going to quickly touch on the gang conditions. As the court is aware, the defendant claimed that he was no longer in a gang, and the district court acknowledged that. He said, I acknowledge the fact that you believe you are no longer in a gang. However, the record in this case shows that at least as of 2018, the defendant was still in the gang. Now, this case was, of course, charged in 2020. The defendant was charged or was sentenced in 2022. The fact of his recent participation in the gang justifies the district court's imposition of gang conditions, and that's because of the defendant's own colloquy with the court, his allocution. The defendant said, I have no reasonable and legitimate means to make money other than to commit illegitimate crimes, because otherwise, all I have is government assistance. And so the district court wanted to restrict the defendant's temptation to go back to, quote, old haunts, which is what this court has previously stated that is a proper basis to restrict one's liberty in association. For those reasons, the government requests that this court affirm. All right. Thank you. We'll hear rebuttal from Ms. Voights. Thank you, Your Honor. I just have three points to make in rebuttal. First, I'd ask the court to look at the record as opposed to the government's representations. For example, the reference to Mr. Tate having a gang nickname, that was in the record. It was stipulated that it was a nickname with no connection to a gang. Second, with connection to the length, by expanding it from nine days to 30 or however many times, and the purported number of six times engaging in drug transactions. We think the math doesn't math. If you actually look at what happened, and if you look at the span of those exhibits between December 6th and December 15th, we think that that does not support anything other than an and we think that is not enough here. To the government's point, second, we think that you have to have a there there when it comes to the conspiracy, and that is lacking both as to the existence of a single conspiracy and as to Mr. Hill's connection to it. Compare the number of calls. My friend across the aisle referred to the existence of toll records. So look at those, we'd ask the court. Look at the number of calls that existed, and look at who Mr. Hill is doesn't support a connection here. Finally, if I could address the sentencing point, I'd just remind the court that the sentences here for the most part were for Mr. Aguiar, 60 months. Lopez was 51 months. Vidal was 15 months. One defendant was simply sentenced to CASA. And by comparison, the two ringleaders, the undisputed ringleaders of however many conspiracies there were, Mr. Tate and Mr. Reed, were 144 months and 121 months compared to Mr. Hill's 110. Do you know what Mr. Tate's guidelines range was? I do not. I'm happy to confirm that and submit that to the court. The career offender brought him very high, and Congress directed the sentencing commission to adopt the career offender guideline because it wanted people who just show that they're going to committing crimes to get higher sentences. He got a huge break off of the career offender guideline. And so that maybe that, what the government is arguing is that's what really distinguishes him here. And so maybe his role wasn't as great, but he had this other very significant aggravating factor. I think one, if the court looks at Mr. Hill's criminal history, I think much of it is very old. Second, I'd submit that if this court should look not just at what his guidelines range was for the career offender guideline applied, but also what it would have been without that. Without it, it would have been 27 to 33 months. And we'd submit that the sentence that was imposed, 110 months, was unreasonable, and the supervised release condition was also not supported. Well, just to invert that, did any of the defendants who were have as extensive a criminal history? I think there, I would have to look and confirm that, Your Honor. But I'm happy to submit that at a 28 day to this court. But we certainly think even if that is a distinguishing factor, it doesn't warrant the significant bump in this case and the significant disparity that exists. If I might submit now. Thank you, counsel. Thank you, Your Honor. All right. The case just argued will be submitted for decision.
judges: COLLINS, THOMAS, JOHNSTONE